

± 553143

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

Luabeya Franck KAPIAMBA    A-95872234    / Civil Action no.
     PETITIONER

Case: 2:07-cv-10258
Assigned To : Edmunds, Nancy G
Referral Judge: Pepe, Steven D
Assign. Date : 01/16/2007
Description: HC KAPIAMBA V GONZALES, ET AL (EW)

V.

Alberto Gonzales, Attorney General;

Michael Chertoff, Secretary of Department of Homeland
     Security;

Robin Baker, U.S. ICE Field Office Director for the District
     Of Detroit;

Al Byam, Sheriff of the Calhoun County Jail;

     RESPONDENTS


PETITION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C §2241

# PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner, LUABEYA FRANCK KAPIAMBA, hereby petitions this Court for a writ of habeas corpus to remedy Petitioner's unlawful detention and asylum status termination by Respondents. In support of this petition and complaint for injunctive relief, Petitioner alleges as follows:

## CUSTODY

1. Petitioner is in the physical custody of Respondents and U.S. Immigration and Customs Enforcement ("ICE"). Petitioner is detained at the CALHOUN COUNTY JAIL in Battle Creek, Michigan. ICE has contracted with Calhoun County Jail to house immigration detainees such as Petitioner. Petitioner is under the control of Respondents and their agents.

## IMMIGRATION STATUS

2. Petitioner is a native and citizen of the Democratic Republic of Congo (DRC). He arrived in the United States in July 2001 with a J-1 visa. Subsequently, he applied and was granted asylum status in October 2003. Petitioner was placed in removal proceedings for a criminal conviction which was alleged to render him removable from the Unites States.

At the conclusion of removal proceedings, the Immigration Judge issued ~~an~~ decision terminating Petitioner's asylum status and ordered him to be removed to his country of nationality. Petitioner does not have a final order of removal. His appeal is pending as of December 22, 2006 before the Board of Immigration Appeals (BIA).

## JURISDICTION

3. This section arises under the constitution of the United States, and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.

4. This court has jurisdiction under 28 U.S.C. § 2241; art. I § 9, cl. 2 of the United States Constitution ("suspension clause"); and 28 U.S.C. § 1331, as Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the constitution, laws, or treaties of the United States. This court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C. § 702, and all writs Act, 28 U.S.C. § 1651.

5. The issues raised by Petitioner in this habeas petition do not challenge the removal order itself, and therefore are not subject to transfer to the petition for review process under the Real ID Act. Real ID eliminates the availability of habeas...

jurisdiction only for cases directly challenging a removal or deportation order itself, but recognizes that habeas remains a viable recourse for dealing with other legal and constitutional issues, such as detention related issues, that do not attack the deportation order directly, though they may well have indirect effects on the removal process. See 8 U.S.C. Section 1252 (a)(2)(C) and (D), and (b)(9).

6. In its legislative history, Congress was careful to explain, for example, that habeas jurisdiction would remain in effect for claims arising independently of challenge to removal orders, such as challenge to detention, since "the bill would eliminate habeas [only] over challenges to removal orders themselves." H.R. Rep. No. 109-72, p. 175, May 3, 2005. Courts have confirmed this interpretation, holding that a variety of issues can continue to be raised in habeas proceedings despite the Real ID transfer provisions, where it can be demonstrated that issues other than the deportation order itself are being challenged. For example, in Brempong V. Chertoff, a federal court in Connecticut retained habeas juridiction over detention related issues rather than transferring the case to the Circuit Court under Real ID. See Brempong V. Chertoff, 2006 WL 618106 at *3 (D. Conn., Mar. 10, 2006)(citing in the internal quotes the legislative history cited supra).

7. The same approach has been taken in other cases dealing with non-detention related issues where the subject...

of the habeas proceeding was not directly focused on the deportation order itself. For example, in Singh v. Chertoff, the habeas petitioner had received asylum status some years prior to the deportation proceedings, but was being subject to deportation on the grounds that he had misrepresented his qualifications as a refugee. The Court held that the process of revocating asylum protection was separate from, and antecedent to deportation, and therefore was independent of any " action taken or proceeding brought to remove an alien from the United States" that would make it subject to the habeas bar of the Real ID. The Court recognizes that " revocation of a grant of asylum almost inevitably leads ... to removal proceedings," but can not be characterized as a removal proceeding itself so as to trigger the Real ID transfer provisions. "[The fact that the revocation of an alien's asylum status almost inevitably causes CIS to initiate removal proceedings ... does not mean that the two actions are the same." Case No. C05-1454 MHP, 2005 WL 2043044 (N.D. Cal., Aug. 24, 2005) at * 2-3. On this basis the Court retained habeas jurisdiction and ruled that the habeas transfer provisions of Real ID did not apply to the circumstances of that case.

Likewise, the Court in Gretu v. Chertoff held that since a claim seeking injunctive relief delaying removal on grounds unrelated to the deportation process was not a challenge to

the removal order itself, jurisdiction remained properly with the District Court. Case No. Civ. A. CV050590M, 2005 WL 1630541 (W.D. La., Jun. 29, 2005).

Singh and Cretu both make clear that habeas review is still possible for claims that do not directly challenge removal orders, even if removal is affected by the result of the habeas proceedings.

8. Like the Brempong, Singh and Cretu cases, the Petitioner's claims do not fit within the habeas transfer provisions of Real ID, because they focus on issues outside of, and different from, a direct challenge to Petitioner's removal order. This case raises independent issues focused on whether the Petitioner's [continued] mandatory detention under INA § 236(c), without prior termination of his asylum status, is lawful. His detention for the purpose of completing removal proceedings, without a prior separate determination that his asylum status is voided because of criminal conviction, raises significant statutory and due process constitutional concerns, as the U.S. Supreme Court established for similarly situated petitioners in Zadvydas V. Davis, 533 U.S. 678 (2001), Kim V. Demore, 123 S. Ct. 1708 (2003), and the 6th Circuit confirmed in Ly V. Hansen, 351 F. 3d 263 (6th Cir. 2003). This court has also confirmed these cases, for example, in Parlak V. Baker, 374 F. Supp. 2d 551 (E.D. Mich. 2005); Uritsky V. Ridge, 268 F. Supp. 2d 842 (E.D. Mich. 2003), Diomande V. Wrona, U.S. Dist. LEXis 33795 (E.D. Mich. 2005).

## VENUE

9. Pursuant to Braden v. 30th Judicial Circuit Court of Kentucky, 450 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Eastern District of Michigan, the judicial district in which Petitioner resides.

## PARTIES

10. Petitioner is a native and citizen of the Democratic Republic of Congo (DRC). Upon his release from serving a ten (10)-month criminal sentence in jail, Petitioner was taken into custody by ICE agents on April 15, 2006, and has remained in ICE custody continuously since that date. On November 27, 2006, at the conclusion of removal proceedings, the Immigration Judge issued a decision terminating Petitioner's asylum status, denied him all other forms of relief, and ordered him to be removed to his country of nationality. Petitioner has filed an appeal with the BIA. His appeal is pending as of December 22, 2006.

11. Respondent Alberto Gonzales is the Attorney General of the United States and is responsible for the administration of ICE and the implementation and enforcement of the Immigration & Nationality Act (INA). As such, Mr. Gonzales has ultimate custodial authority over Petitioner.

12. Respondent Michael Chertoff is the Secretary of the Department of Homeland Security. He is responsible for the administration of ICE and the implementation and enforcement

of the INA. As such, Mr Chertoff is the legal custodian of Petitioner.

13. Respondent Robin Baker is the ICE Field Office Director for the District of Detroit, and is Petitioner's immediate custodian.

14. Respondent Al Byan is the Sheriff of Calhoun County jail. He has contracted with ICE to house Petitioner in his detention facility.

## FACTUAL ALLEGATIONS

15. Petitioner arrived in the United States on July 28, 2001 with a J-1 visa. He was awarded a Fulbright scholarship to pursue his graduate studies in the U.S. Petitioner applied and was granted asylum on October 2, 2003. Petitioner is married and is a father of two children, of whom he has not yet seen the second. After years of separation, Petitioner's family arrived in the U.S. in November 2005 for reunion. However, Petitioner has not been reunited with his family due to his continued detention.

16. Petitioner attended the Center for Development Economics ("CDE") at Williams College in Massachusetts, where he graduated with a master's degree in June 2002. Subsequently he was admitted in Ph.D. program in the department of Agricultural Economics at Kansas State University for Spring of 2003.

In fall of 2003, Petitioner transferred at Michigan State University (MSU) where he is pursuing a dual Ph.D. in Economics and Agricultural Economics.

17. Petitioner had no criminal record up until his arrest on June 15, 2005. He was charged with three (3) counts of Criminal Sexual Conduct (CSC) - 3rd degree, in violation of Michigan statute. On December 9, 2005, the three (3) counts of CSC were dismissed in Circuit Court, and eventually Petitioner was convicted by a "nolo contendere plea" to one (1) count of "Assault with Intent to Commit CSC". On January 19, 2006, Circuit Judge sentenced Petitioner to a term of twelve (12) months in jail (credit for 218 days served). Petitioner was released on April 15, 2006 after serving 10 months in jail.

18. On March 17, 2006, Petitioner was served a Notice of Intent to Terminate Asylum Status and Hearing before an Immigration Judge issued by the U.S. Citizenship and Immigration Services (USCIS). USCIS notified Petitioner that his asylum status could be terminated pursuant to 8 C.F.R. § 208.24 (a)(2)(2005). The location of the hearing and the date and time were yet to be specified in the Notice to Appear (NTA).

19. On April 15, 2005, the day of his release, Petitioner was notified by the county jail that he has an immigration hold, and he could not be released. On April 18, 2006, after waiting in jail beyond the 48-hour rule, Petitioner was taken in ICE custody by ICE agents without a warrant for arrest.

Petitioner was never given a notice that his asylum status is terminated because of his criminal conviction.

On April 19, 2006, Petitioner was served a notice of custody determination subjecting him to mandatory detention pending removal proceedings. ICE commenced removal proceedings against Petitioner without prior termination of asylum status. The NTA charged Petitioner with removability, and no hearing was scheduled for the purpose of terminating the grant of asylum. No termination hearing was scheduled and held before the Immigration Judge in conjunction with removal proceedings. Petitioner was denied the opportunity to present evidence showing that he is still eligible for the grant of asylum in the U.S.

20. On May 24, 2006, at his master hearing, through video conference, Petitioner's counsel, without filing a Notice of Appearance as Attorney for Petitioner nor prior consultation with the client, conceded to the charges of removability. The Immigration Judge summarly made a determination that Petitioner's conviction is an aggravated felony, and as such, constitutes a particularly serious crime (PSC). At the hearing scheduled on June 28, 2006 for the filing of application for relief from removal, Petitioner substituted his legal counsel and requested the Immigration Judge to review her determination that Petitioner is an aggravated felon, and his conviction constitutes a PSC. The Judge consented to review the issues at the individual hearing and accepted to receive memorandum of law / briefs.

21. During the proceedings, no hearing was held for the purpose of terminating a grant of asylum. The USCIS / ICE never established, by preponderance of evidence, the ground set forth, in the Notice of Intent, for the revocation of Petitioner's asylum status. Petitioner was not given at the hearing the opportunity to present information and discuss evidence to show that he is still eligible for asylum. The Immigration Judge terminated Petitioner's asylum status at the conclusion of removal proceedings without considering the issue as separate from, antecedent to removal, and therefore independent of any action taken or proceeding brought to remove alien from the United States [ See Singh v. Chertoff, id ].

22. Petitioner has remained continuously in ICE custody since April 15, 2006 without bail. The Immigration Judge declined having jurisdiction to review Petitioner's custody determination. She extended removal proceedings over a period of seven months and a half. She rescheduled the hearings more than one time for later dates without valid reasons. For example, despite the fact that Petitioner met the deadline for filing application and briefs, his individual hearing set for August 30 was rescheduled for October 25, 2006. After the individual hearing was concluded, the Immigration Judge scheduled the rendering of her decision for a later date on November 27, 2006. Petitioner's detention pending removal proceedings has exceeded the "vast majority" of cases. The Immigration Judge failed to conclude proceedings within the...

The Immigration Judge failed to conclude proceedings within the mandated case completion goals [see EOIR's own regulatory and guidelines].

23. Petitioner remains in ICE custody, pending his appeal before the BIA, without an opportunity to seek administrative review of his custody status. ICE has been favoring a policy consistent with the view that continued detention is warranted where the alien has filed an appeal of the Immigration Judge's decision with the BIA. In other words, the reason for detention beyond the 6-month rule is tied to action that the alien has taken to challenge his removal.

24. It is a well established fact that immigration detention is non-punitive and regulatory. However, conditions of detention in Calhoun County Jail, with which ICE has contracted to house its detainees, such as Petitioner, are very harsh. Petitioner is housed and classified in a Unit together with the general criminal population (convicted and pretrial detainees). They are treated the same. Immigration detainees are frequently threatened by other inmates, verbally abused and discriminated against by jail guards. There is no impartial grievance procedure in place for immigration detainees. Petitioner has been subject to wearing shackles every time when leaving his Unit for family, medical, professional and religious visits.

Petitioner has had to wear shackles on his feet during all his hearings through video conference before the Judge in Immigration Court. As a result, Petitioner bears marks of sores on his ankles and his socks bear traces of blood.

25. Petitioner suffers from diabetes. Respondents have not provided Petitioner with an opportunity to be seen by an eye medical doctor as required by his diabetic condition. Petitioner is not receiving adequate food for his proper diet; he has to rely on food ordered from commissary with his own money in order to compensate for lack of appropriate food in jail. These conditions, combined to a very limited medical treatment Petitioner has been receiving, have resulted in a shape decline of his health. Petitioner is rotting in detention, facing a real risk of loosing the very life he is trying to protect by avoiding and challenging removal to the Democratic Republic of Congo (DRC), his country of nationality.

26. Petitioner's family arrived in the United States in November 2005 for reunion when he was serving time on his criminal conviction. Petitioner's continued detention has meant that he has not been able to see his family since their arrival in the United States. His second son, who was not born when Petitioner left the DRC, is now 5 years old. Due to the long distance from Columbus, Ohio, where his family lives, Petitioner has no visit from family members.

## LEGAL FRAMEWORK FOR RELIEF

27. Section 1158(c) of 8 U.S.C is the statutory provision governing asylum status. 8 C.F.R. § 208.24 (2005) provides the regulations that define procedures for termination of asylum or withholding of removal. Section 236 (c) of INA [8 U.S.C. § 1226(c)], as amended and interpreted by the Supreme Court's decision in Kim V. Demore, 123 S. Ct. 1708 (2003), governs the authority of the Attorney General to take in custody, and detain without bail, certain categories of "inadmissible" or "removable" criminal aliens during the pendence of their removal proceedings.

28. The Attorney General (AG) shall not remove or return an alien granted asylum to the alien's country of nationality of nationality, unless asylum status is terminated pursuant to applicable federal regulations. In the case of termination of asylum by the Immigration Services under 8 C.F.R. § 208.24(a), the alien shall be given a notice of intent to terminate, with the reasons therefor, at least 30 days prior to the interview before an asylum officer (AO). The alien shall be provided the opportunity to present evidence showing that he or she is still eligible for asylum. If the AO determines that the alien is no longer eligible for asylum, the alien shall be given a written notice that asylum status and any employment authorization issued pursuant thereto are terminated [8 C.F.R. § 208.24 (c)].

29. When an alien's asylum status is terminated under 8 C.F.R. § 208.24(e), the service shall initiate removal proceedings, as appropriate, if the alien is not already in removal proceedings. Removal proceedings may take place in conjunction with the termination hearing scheduled under 8 C.F.R. § 208.24(f). In such proceedings, the Immigration service must establish, by a preponderance of evidence, one or more of the grounds for asylum termination.

30. The requirements set forth in § 208.24(f) are not met by the Immigration Judge looking at the issue of asylum termination as part of removal proceedings. In Singh v. Chertoff, the court held that the process of revocating asylum protection was independent of any "action taken or proceeding brought to remove an alien from the United States". The Court recognizes that "revocation of grant of asylum almost invariably leads... to removal proceedings," but can not be characterized as a removal proceedings itself". The fact that the revocation of an alien's asylum status almost inevitably causes CIS/ICE to initiate removal proceedings.... does not mean that the two actions are the same. Case No. C05-1454 MHP, 2005 WL 2043044 (N.D. Cal., Aug. 24, 2005) at *2-3.

31. The plain language of 8 U.S.C. § 1158(c)(3) [Removal when Asylum is terminated] is squarely consistent with the interpretation that an alien granted asylum is not... subject to the grounds of inadmissibility or removability, and...

as such, is not liable to being taken into ICE custody under INA § 236 (c) until his asylum status is properly terminated. Unless and until asylum status is terminated, the statute prohibits the Attorney General from removing or returning an alien granted asylum to his country of nationality.

31. In Kim V. Demore, the Supreme Court's decision was premised on a finding that petitioner Kim conceded removability. Cases where the person is challenging removability, or seeking relief from removal, may be distinguished from the Supreme Court's holding in Kim on that basis. The Supreme Court noted that Kim ultimately may not be deported because he is applying for relief from removal, 123 S. Ct. at 1717 n.6. The Court said also that Kim was applying only for withholding of removal. Withholding of removal, unlike other forms of relief, such as asylum and cancellation of removal, does not render a person "non-removable.

32. The Supreme Court upheld mandatory detention in Kim V. Demore relying in part on a finding that "not only does detention have a definite termination point, in the majority of cases it lasts for less than [ ] 90 days." The Court did so to avoid conflict with its earlier decision in Zadvydas V. Davis, 533 U.S. 678 (2001) (striking down government indefinite detention of noncitizens following completion of removal proceedings), in which the Court held that individuals with final orders of removal could validly be detained for only six months. 533 U.S. at 701.

31. Implicit in the Supreme Court's decision in Kim is that in the "vast majority" of mandatory detention under INA §236(c), detention lasts about a month and a half, and in the minority of cases - where the person appeals to the BIA - detention lasts about five months. Cases where the length of detention has exceeded, or is likely to exceed, such time periods may be distinguished from Kim on that basis. See Kim at 1722 (Kennedy, J. Concurring) (explaining Justice Kennedy's understanding that the majority opinion may allow a challenge to detention when, for example, there has been unreasonable delay in the removal proceedings).

32. This brings the Petitioner's case within the ambit of [decisions] a number of decisions that have been issued since Kim, recognizing that the Supreme Court upheld mandatatoy detention of aliens who are challenging their deportation only for a relatively brief period pending removal proceedings. For example, in Gonzales v. O'Connell, 355 F.3d 1010 (7th Cir. 2004), the court pointed out that "Kim left open the question of whether mandatory detention under 8 U.S.C. §1226(c) is consistent with due process when a detainee makes a colorable claim that he is not in fact deportable". See also Uritsky v. Ridge, 2003 U.S. Dist. LEXIS 17698 (E.D. Mich. 2003).

33. Courts have confirmed the interpretation that Kim left open the possibility that where detention lasts longer than the "vast majority" of cases under INA §236(c), detention ....

without an individualized bond hearing may no longer be justified. In Ly v. Hansen, 351 F.3d 263 (6th Cir. 2004), the Court concluded that "the proper interpretation of Demore v. Kim was to "[construe] the pre-removal detention statute to include an implicit requirement that removal proceedings be concluded within a reasonable time, [thereby avoiding] the need to mandate the procedural protections that would be required to detain deportable aliens indefinitely." Therefore, the 6th Circuit "affirmed the grant of habeas corpus and the District Court's finding that the incarceration for 18 months pending removal proceedings is unreasonable, [without requiring] the United States to hold bond hearing for every criminal alien detained under INA § 236(c). Circuit Judge Haynes (concurring) pointed out that in Rosales-Garcia v. Holland, 322 F.3d 386, 415 (6th Cir. 2003), "the Court imposed, as a matter of law, a six months limitation for detention of excludable aliens. Surely, as a matter of law, the initial detention of aliens who are lawful permanent residents (LPRs) and who challenge their deportation, should be less than six months, the Constitutional limitation for detained aliens who are unlawfully in this country. LPRs aliens who contest their continued detention should have greater due process rights than aliens who have been found to be removable or excludable." In Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005), the Court held that despite the substantial powers that Congress may exercise in regard to aliens, it is Constitutionally doubtful that Congress may...

authorize imprisonment of [two years and four months] duration for lawfully admitted resident aliens who are subject to removal."

34. In its most recent decisions in Parlak v. Baker, 374 F. Supp. 2d 551 (E.D. Mich. 2005) and Diomande v. Wrona, 2005 U.S. Dist. LEXIS 33795 (E.D. Mich. Dec. 2005), this Court held that Parlak's 8 months and Diomande's 21 months of detention violate due process. The Court granted habeas petition in both cases. Other Districts have reached the same decision. See, for example, Fuller v. Gonzales, 2005 U.S. Dist. LEXIS 5828 (D. Conn. 2005) ("Although Kim held that the desire to ensure an alien's presence at future proceedings and the desire to protect the community provide sufficient justification for a short mandatory detention, the sufficiency of that justification decreases as the length of incarceration increases")

35. In Zadvydas v. Davis, the Supreme Court reaffirmed the principle that aliens are entitled to protection under " Due Process" clause. The Court stated that " the Due Process clause applies to all persons within the United States, including aliens." 121 S. Ct. at 2500. Even for aliens, "freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that clause protects." 121 S. Ct. at 2498. The Court noted that it has upheld civil or "non-punitive" detention only in those limited circumstances where government has provided a "special justification", outweighing the individual's liberty interest.

# CLAIMS FOR RELIEF

## COUNT ONE:

### STATUTORY VIOLATION

36. Petitioner re-alleges and incorporates by reference paragraphs 1 through 35 above.

37. Petitioner's [continued] detention by Respondents is unlawful and contravenes INA § 236(c) as interpreted by the Supreme Court in Kim. Section 236(c) of INA lists broad categories of noncitizens who are subject to mandatory detention based on their removability under specific criminal and security related provisions. An alien granted asylum is not subject to the grounds of inadmissibility or removability unless and until his asylum status is terminated by an order issued by USCIS or the Immigration Judge pursuant to applicable regulations. That order will not be final until the BIA affirms it, or until [the] period for seeking BIA review has expired. Until there is a final order of asylum termination, the statute does not authorize the Attorney General to take an alien granted asylum into custody for the purpose of conducting removal proceedings. Under Kim, asylum status nullifies the finding of removability that would qualify Petitioner for detention.

38. Kim authorizes detention of removable criminal aliens only for a short period necessary to complete removal proceedings. Even if Petitioner was removable, the length of his detention...

has exceeded the implicit limits in Kim as well as the explicit mandated case completion goals defined and set forth in the EOIR's own regulatory and policy guidelines. Petitioner continue to languish in detention because he has decided to challenge the Immigration Judge's decision through the appeal process. Although there is a possibility that the BIA could reverse the IJ's decision, it is more than possible that Petitioner's case will proceed through the circuitry of administrative and judicial appeals for several months. Given the legal intricacies surrounding Petitioner's removability, it will very likely take several more months for a final determination of Petitioner's status. There is a real certainty that Petitioner is facing a significant period of detention for an indeterminate period of time. This amounts to a violation of due process as upheld by the Supreme Court in Zadvydas, Martinez [ 543 U.S. 371 (2005), and confirmed by this Court.

## COUNT TWO
### SUBSTANTIVE DUE PROCESS VIOLATION

39. Petitioner re-alleges and incorporates by reference paragraphs 1 through 38 above.

40. Petitioner [continued] detention violate his right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint.

41. The Due Process clause of the Fifth Amendment requires that deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government interest.

While Respondents would have an interest in detaining Petitioner in order to complete removal proceedings, that interest does not justify potentially indefinite detention of Petitioner.

## COUNT THREE
### PROCEDURAL DUE PROCESS VIOLATION

42. Petitioner re-alleges and incorporate paragraphs 1 through 41 above.

43. Under the Due Process Clause of the Fifth Amendment, an alien is entitled to a timely and meaningful opportunity to demonstrate that she/he should not be detained. Petitioner in this case has been denied the opportunity to show the evidence that he is still eligible for the grant of asylum despite his criminal conviction. The Immigration Judge declined having jurisdiction to review Petitioner custody determination, leaving him without an opportunity to demonstrate he is not a flight risk nor a danger to the community. ICE does not make decisions concerning aliens custody status if they have filed an appeal of the IJ's decision. There is no other administrative mechanism in place for Petitioner to demand a decision, ensure that a decision will be made, or appeal a custody decision that violates the statute. Habeas petition is the only judicial forum for Petitioner to raise the legal and constitutional matters that cannot be adequately resolved through a petition for review process, such as his undue asylum termination and [Continued] detention.

## COUNT FOUR:

### WRONGFUL ARREST AND UNLAWFUL SEIZURE

44. Petitioner re-alleges and incorporates paragraphs 1 through 43 above.

45. Under the Fourth Amendment, individuals are protected from wrongful arrest and unreasonable searches and improper seizures of evidence. Petitioner was arrested, without a warrant for Arrest being issued, by ICE agents, after his release from jail. Without his asylum status being terminated, ICE took Petitioner in custody on the ground that he is an alien who is within the United States in violation of the immigration law. ICE's determination to take Petitioner in custody for removal proceedings squarely violates 8 U.S.C. § 1158 (C), which provides that the alien that shall be subject to applicable grounds of inadmissibility or removability is the one whose asylum status has been terminated by a final order.

46. Prior to his individual hearing in immigration court, Petitioner requested Calhoun County Jail to access his political membership card in the locker for filing with the court. Rather, his personal property was searched and his identification documents seized by the Immigration Liaison Officer at Jail, and reportedly sent to the District Counsel in Detroit. These documents included: Petitioner's passport, Michigan state ID, driver's license, social security card, employment authorization card, Congolese ID document... These documents are the property of Petitioner, and their confiscation and use as evidence in his immigration case by ICE constitutes a flagrant violation of his constitutionally protected rights.

# PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant [him] the following relief:

1) Assume jurisdiction over this matter;

2) Grant Petitioner a writ of habeas petition directing the Respondents to remedy Petitioner's asylum status and immediately release him from custody without conditions;

3) Enter preliminary and permanent injunctive relief enjoining Respondents from further unlawful detention of Petitioner;

4) Enter injunctive order enjoining Respondents to pay reparations that it deems fair and just for constitutional injury suffered by Petitioner, irreparable damages to his health, prejudice to his education and hardship to his family.

5) Grant any other and further relief that this Court deems just and proper. [I affirm].

I affirm, under penalty of perjury, that the foregoing is true and correct.

LUABEYA F. KAPIAMBA                    January 03, 2007

PETITIONER

LUABEYA F. KAPIAMBA        A-95 872 234
CALHOUN COUNTY JAIL
185 E. MICHAGAN AVENUE
BATTLE CREEK, MI 49014

# CIVIL COVER SHEET FOR PRISONER CASES

| | | |
|---|---|---|
| Case No. 07-10258 | Judge: Nancy G. Edmunds | Magistrate Judge: Steven D. Pepe |

**Name of 1st Listed Plaintiff/Petitioner:**

LUABEYA FRANCK KAPIAMBA

**Name of 1st Listed Defendant/Respondent:**

ALBERTO GONZALES, ET AL

**Inmate Number:** A-95672234

**Additional Information:**

**Plaintiff/Petitioner's Attorney and Address Information:**

**Correctional Facility:**

CALHOUN COUNTY JAIL

185 E. MICHIGAN AVENUE
BATTLE CREEK   MI   49014

---

**BASIS OF JURISDICTION**
☒ 2 U.S. Government Defendant
☐ 3 Federal Question

**NATURE OF SUIT**
☒ 530 Habeas Corpus
☐ 540 Mandamus
☐ 550 Civil Rights
☐ 555 Prison Conditions

**ORIGIN**
☒ 1 Original Proceeding
☐ 5 Transferred from Another District Court
☐ Other:

**FEE STATUS**
☐ IFP *In Forma Pauperis*
☒ PD Paid

---

**PURSUANT TO LOCAL RULE 83.11**

1. *Is this a case that has been previously dismissed?*
   ☐ Yes      ☒ No
   ➢ If yes, give the following information:

      Court: _____

      Case No: _____

      Judge: _____

2. *Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)*
   ☐ Yes         ☒ No
   ➢ If yes, give the following information:

      Court: _____

      Case No: _____

      Judge: _____