UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEB 2 2 2007

CLERK'S OFFICE
DETROIT

LUABE YA FRANK KAPIAMBA
　　　Petitioner

Case No. 07- 10258*

Honorable Nancy G. Edmunds

　　　V.

ROBERTO GONZALES, et al
　　　Defendants

_____/

BRIEF IN SUPPORT OF PETITIONER's
HABEAS CORPUS PETITION
PURSUANT TO 28 U.S.C § 2241

(*)　(CONSOLIDATED WITH 07-10281)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . *i*

STATEMENT OF ISSUES PRESENTED . . . . . . . . . . . . . . . . *ii*

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. A decision to detain an alien or to terminate an alien's asylum status granted under section 208 of INA is not an "action taken or proceeding brought to remove an alien from the United States", as is required to preclude district court jurisdiction to entertain authority over petitions for a writ of habeas corpus. . . . . . . . . . . . 3

II. Termination of asylum status granted under section 208 of INA is neither automatic nor mandatory because of alien's criminal conviction. . . . . . . . . . . . . . . . . . . 7

A. Asylum status is not automatically voided because of alien's criminal conviction. Asylee status of an alien found to have been convicted of a criminal offense may be subject to termination through a specific regulatory process fairly sufficient to comport with the requirements of due process. . . . . . . 7

B. Termination of a grant of asylum is not mandatory with respect to an asylee who qualifies and merits adjustment of status and a waiver of inadmissibility under sections 209(b) and (c) of INA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. Section 236(c) of the INA lists broad categories of non-citizens who are subject to mandatory detention based on their removability under specific criminal and security provisions. However, an alien who is found to maintain his asylum status is not subject to any grounds of inadmissibility or removability.

. . . . . . . . . . 14

A. Unless asylum status is terminated and the alien is determined to be inadmissible in the course of applying for adjustment of status, an alien asylee is not subject to any applicable grounds of removability and, as such, is not liable to being taken into custody for removal purposes. . . . . 15

B. Mandatory detention — beyond a reasonable period of time necessary to complete removal proceedings — violates both substantive and procedural due process under the Fifth Amendment of the United States Constitution. . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

I. BIA PRECEDENT DECISIONS

    1. Matter of Garcia-Alzugaray, 19 I.&N. Dec. 407 (BIA 1986)

    2. Matter of Jean, 23 I.&N. Dec. 373, 383 (AG 2002)

    3. Matter of H-N-, 22 I.&N. Dec. 1039 (BIA 1999)

    4. Matter of K-A-, 23 I.&N. Dec. 661 (BIA 2004)

    5. Matter of Sejid Smriko, 23 I.&N. Dec. 836 (BIA 2005)

II. CASES

    6. Alexandre v. Gonzales, 2006 WL 940667 (11th Cir. 2006)

    7. Anderson v. Yungkau, 329 U.S. 482, 485 (1947)

    8. Demore v. Kim, 538 U.S. 510, 123 S.Ct. 1708 (2003)

    9. Diomande v. Wrona, 2005 U.S. Dist. Lexis 33795 (E.D. Mich. 2005).

    10. Getachew v. INS, 25 F.3d 841, 845 (9th Cir. 1994)

    11. Ly v. Hansen, 351 F.3d 263, 270 (6th Cir. 2003)

    12. Morincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996)

    13. Nuru v. Gonzales, 404 F.3d 1207, 1229 (9th Cir. 2005)

    14. Parlak v. Baker, 374 F.Supp. 2d 551 (E.D. Mich. 2005)

    15. Selgeka v. Carrol, 184 F.3d 337 (4th Cir. 1999)

    16. Singh v. Chertoff, 2005 WL 2043044 (N.D. Cal.)

    17. Smriko v. Ashcroft, 387 F.3d 279 (3d. Cir. 2004)

    18. United States v. Rodgers, 461 U.S. 677, 706 (1983)

    19. Uritsky v. Ridge, 286 F.Supp. 2d 842 (E.D. Mich. 2003)

    20. Zadvydas v. Davis, 533 U.S. 678 (2001)

III. STATUTES

    21. Immigration and Nationality Act ("INA)

    22. REAL ID ACT, Pub. L. 109-13.

# STATEMENT OF ISSUES PRESENTED

I. Whether the District Court has jurisdiction to entertain an alien's statutory and Constitutional claims of Due Process violation arising from mandatory detention and termination of asylum status by Federal Immigration Officials?

II. Whether termination of asylum status is automatic and mandatory with respect to an alien asylee who is found to have been convicted of a criminal offense?

III. Whether the Immigration and Nationality Act ("INA") authorizes the Immigration and Customs Enforcement ("ICE") to take into custody and detain without bail an alien who is found to maintain asylum status pending initiation and completion of removal proceedings?

## SUMMARY OF ARGUMENT

This brief is being filed by petitioner in support of the petition for a writ of habeas corpus he filed with this court on January 17, 2007. The fundamental nature of Petitioner's claims is that his detention in the custody of the United States Immigration and Customs Enforcement ("ICE") and subsequent termination of his asylum status by the Immigration Judge ("IJ") violate his rights to due process of law both under the Immigration and Nationality Act and the Fifth Amendment of the United States Constitution.

More specifically, petitioner asserts that, as an alien granted asylum status under INA § 208, he is not subject to any applicable grounds of inadmissibility or deportability and, as such, is not liable to being taken into custody pursuant to INA § 236(c) for purpose of conducting removal proceedings. Because termination of asylum is neither automatic nor mandatory based upon the alien's criminal conviction, the decision-making procedures employed by ICE violate procedural protections encompassed in its own regulations to comport with the requirements of due process of law.

Furthermore, ICE authorities and the IJ violated petitioner's due process rights when they failed to hold an evidenciary or a termination hearing prior to revoking petitioner's asylum status. The IJ, in particular, failed to comply with the regulation under 8 C.F.R. § 1240.11(a) - which

governs her authority to adjudicate applications for adjustment of status and a waiver of inadmissibility with respect to an alien whose asylum status is subject to termination.
The same regulation mandates the IJ to inform the alien of his apparent eligibility to apply for discretionary relief from asylum termination and to afford the alien an opportunity to make application during the hearing. By failing to hold an evidenciary hearing at the asylum office prior to terminating petitioner's asylum status and initiating removal proceedings, ICE authorities denied petitioner an opportunity to present evidence that his asylee status is not subject to termination, or, alternatively, to seek a relief from termination under INA §§ 209(b) and (c). On the other hand, by terminating petitioner's asylum status at the completion of removal proceedings, while at the same time ordering petitioner removed, the IJ left petitioner without an opportunity to seek a relief, which if granted, would have required termination of removal proceedings commenced against him.

Despite the REAL ID Act transfer provisions, courts have confirmed that a variety of issues can continue to be raised in habeas proceedings where it can be demonstrated that issues other than deportation order itself are being challenged. As is the case in petitioner's habeas petition, procedures used to terminate asylum status do not involve a decision to "commence proceedings, adjudicate cases, or execute removal order against" him. Indeed, the procedures at issue in this lawsuit are generally completed before removal proceedings of any kind commence. Therefore nothing limits this court's jurisdiction over petitioner's habeas petition.

## ARGUMENT I.

A decision to detain an alien or to terminate an alien's asylum status granted under INA § 208, 8 U.S.C. § 1158, is not an action taken or proceeding brought to remove an alien from the United States, and thefore is not subject to transfer to the Petition for Review Process under the REAL ID Act.

Following its amendment by the recently enacted Real ID Act of 2005, PUb.L. No 109-13, 119 Stat. 231 (coolified as amended at 8 U.S.C. § 1252), section 1252 (b)(9) provides that the Court of appeals is the exclusive forum in which any questions of law or fact "arising from any action taken or proceeding brought to remove an alien from the United States" may be adjudicated. 8 U.S.C. § 1252(b)(9); see also 8 U.S.C. §§ 1252(a)(1), 1252(a)(5). REAL ID eliminates the availability of habeas jurisdiction only for cases directly challenging a deportation order itself, but recognizes that habeas remains a viable recourse for dealing with other legal and constitutional issues, such as detention related issues, that do not attack the deportation order directly, though they may well have indirect effects on the deportation process.

In this case, petitioner is not challenging the deportation order as such, but is claiming that prior to being placed in detention for purpose of conducting removal proceedings, his asylum status had to be lawfully terminated. In addition, prior to initiating removal proceedings, petitioner was entitled to an evidenciary or termination hearing and an opportunity

to have his applications for adjustment of status and a waiver of inadmissibility considered. The decision-making procedures employed by ICE and the IJ to detain petitioner and to terminate his asylum status were at great variance with procedural protections the statute and its implementing regulations afford to an alien asylee whose asylum status may be subject to termination. The procedures at issue in petitioner's habeas do not involve a decision to "commence proceedings, adjudicate cases, or execute removal orders against" an individual. Indeed, procedures used to terminate an alien asylum status are generalement completed before removal proceedings of any kind commence.

We can look to post and pre-REAL ID case law in determining whether asylum related issues are subject to transfer to the petition for review process under REAL ID Act. Of relance in post-REAL ID Act is the Northern District California District Court's opinion in Singh v. Chertoff, 2005 WL 2043044(N.D.Cal.). Petitioner Singh had received asylum status some years prior to the deportation proceedings, but was being subjected to deportation on the grounds that he had misrepresented his qualifications as refugee. The court held that the process of revocating asylum protection was separate from, and antecent to deportation, and therefore was independent of any "action taken or proceeding brought to remove an alien from the United States" that would make it subject to the habeas bar of REAL ID. The court recognized that "revocation of a grant of asylum almost invariably leads... to removal proceedings," but cannot be characterized as a removal proceedings itself so as to trigger the REAL ID transfer provisions.

"[T]he fact that the revocation of an alien's asylum status almost inevitably causes CIS to initiate removal proceedings ... does not mean that the two actions are the same." 2005 WL 2043044 (N.D. Cal, Aug. 24, 2005) at *2-3. On this basis the court retained habeas jurisdiction and ruled that the habeas transfer provisions of REAL ID did not apply to the circumstances of that case.

Another post-REAL ID case of relevance is Alexandre V. U.S. Attorney General, 2006 WL 940667 (11th Cir., Apr. 12, 2006). Alexandre sought to raise-through a habeas corpus petition filed prior to the passage of REAL ID Act - the issue of his continued eligibility to apply for waiver and discretionary relief because his conviction pre-dated the establishment of the statutory criminal conviction bar. As a result of REAL ID, his habeas petition was dismissed by a federal District Court on the grounds that the sole and appropriate method remaining to him, post-REAL ID, was to raise these issues through the petition for review process. Alexendre attempted to do just that, but his petition was denied by the U.S. Court of Appeals for the Eleventh Circuit on the grounds that the appellant does not have the right the raise these matters through the petition for review process. Alexandre filed an appeal in the U.S. Court of Appeals for the Third Circuit (the Circuit having jurisdiction over the District Court for the District of New Jersey). In its brief amicus curiae in support of appellant Alexandre, the World Organization for Human Rights USA argues that the District Court made a fundamental error, and misapplied the provisions of REAL ID Act when it found that habeas was precluded, and that petition for review was the proper forum.

"Of particular relevance in the pre-REAL ID period is the Fourth Circuit's opinion in Selgeka V. Carroll, 184 F. 3d 337 (4th Cir. 1999). Selgeka, an alien, claimed that he had been deprived of due process when the IJ and the Immigration and Naturalization Service ("INS"), CIS's predecessor agency, refused to hold a hearing on his asylum application and failed to prepare a record of the administrative proceedings. Id. at 341. On appeal of the district court's order denying the applicant's habeas corpus petition on a number of nonjurisdictional grounds, the government urged the Fourth Circuit to dismiss the petition arguing that 8 U.S.C. § 1252(g), which grants the court of appeals exclusive jurisdiction to review claims arising out of decisions or actions to commence proceedings, adjudicate cases, or execute removal orders against any alien under [the INA]"-precluded the district court from exercising habeas corpus jurisdiction over the applicant's claims. Id. The Fourth Circuit disagreed, holding that the applicant's claim that he was entitled to have an immigration judge hear evidence regarding his eligibility for asylum and to have an administrative record of those proceedings prepared by INS did not fall within any of the three categories decisions that Congress intended to shield from habeas corpus review when it imposed the jurisdictional limitations set forth in section 1252(g). Id at 341-42. See also Reno V. American-Arab Anti-Discrimination League, 525 U.S. 471, 483, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999).

In the instant case, as well, the issues of petitioner's detention, asylum status termination and eligibility for adjustment of status and waiver of inadmissibility are not beyond the scope of this court's jurisdiction.

## ARGUMENT II.

Termination of asylum status granted under INA § 208 is neither automatic nor mandatory because of alien's criminal conviction. An alien asylee who is found to have been convicted of a criminal offense is entitled to an evidenciary hearing and to have the an administrative record of those proceedings prepared by an Immigration Officer or the court. Such termination hearing is the proper forum for adjudicating any claims of asylum status revocation and alien's inadmissibility for a grant of relief from termination under INA §§ 209(b) and (c).

### A.
A. Termination of asylum status is not automatic

Asylum status is not automatically voided because of an alien's criminal conviction. Termination of asylee status can be undertaken through a specific regulatory process before an alien can be stripped of the statutory protections that accompany asylum status, including protection from any grounds of inadmissibility under INA § 212(a) or removability under INA § 237(a).

To afford protection of alien's due process rights, the statute and its implementing regulation provide procedures for termination of the grant of asylum status. See 8 C.F.R. §208.24 (2005). The Citizenship and Immigration Service may undertake to terminate asylum status through two different procedures. First CIS may conduct an interview at the asylum office. Under this procedure, CIS regulations provide that an alien must

be given notice of intent to terminate his or her asylum status and an opportunity to challenge the grounds on which that notice is issued. See 8 C.F.R. § 208.24(C). Second CIS may elect to vest the Immigration Court with jurisdiction over termination proceedings scheduled under 8 C.F.R. § 208.24(f). In such proceedings, the Service (CIS) must establish, by a preponderance of evidence one or more of the grounds set forth for termination.

Any alien whose asylum status is found to be subject to termination may apply for adjustment of status and a waiver of inadmissibility under sections 209(b) and (c) of INA. The regulation applying to asylees specifically refers to the service (CIS)'s jurisdiction to grant waivers of inadmissibility. See 8 C.F.R. § 209.2 (b)(2004). Once an asylee is denied relief from termination by the service and has been placed in removal proceedings, the IJ and the BIA have exclusive jurisdiction to adjudicate the asylee's application for adjustment of status and a waiver of inadmissibility pursuant to 8 C.F.R.§ 1240.11(a)(2). See Matter of K-A-, 23 I.& N. Dec. 661 (BIA 2004) [distinguished from Matter of H-N-, 22 I.& N. Dec. 1039 (BIA 1999)(for an alien refugee admitted under INA § 207, 8 U.S.C.§ 1157)]. .....Moreover, 8 C.F.R. § 1240.11(a)(2) provides that "[T]he I.J. shall inform the alien of his or her apparent eligibility to apply for any benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing."

Viewed in light of regulatory process for terming asylum

status, the statute and its implementing regulations afford an alien a full panoply of procedural protections that attach when CIS/ICE seeks to revoke an alien's asylee status and wishes to remove the alien from the United States.

## B.

**B.** Termination of Asylum Status is not Mandatory

With respect to an alien who qualifies for and merits adjustment of status and a waiver of inadmissibility under INA §§209(b) and (c), termination of the grant of asylum is not mandatory. See Matter of K-A-, 23 I. & N. Dec. 661 (BIA). In the Matter of K-A-, the Department of Homeland Security (DHS) asserted on appeal before the BIA that the IJ erred in adjudicating the respondent's application for section 209 relief when her asylee status was subject to termination because of her admitted aggravated felony conviction. According to DHS, the IJ was obliged to adjudicate its request for termination of respondent's asylee status before considering any further application for relief.

The board pannel members disposed held that the DHS's position on appeal — that the Attorney General is obliged to terminate asylee status whenever possible — does not find support in the plain language of the statute or regulation. In essence, the DHS urges us to construe the permissive language of section 208(C)(2) and 8 C.F.R. § 1208.24 as if it were mandatory, so as to avoid frustrating an unspoken but implied congressional "policy" against permitting aliens convicted of an aggravated felony to seek section 209 relief. We are not persuaded by the DHS' argument."

In order to safely conclude that Congress plainly employed permissive language to describe the Attorney General's role in terminating an asylee status, the board looked at the use of the verb "may" in section 208(c) of INA, the statutory provision governing asylum status. The board acknowledged that the verb "may" can be interpreted to mean "shall" under certain circumstances. See United States v. Rodgers, 461 U.S. 677, 706 (1983). The board, however, pointed out that such construction is particularly disfavored when Congress has employed the two different verbs in adjacent statutory passages. See Anderson v. Yunghau, 329 U.S. 482, 485 (1947) (stating that when the Rule uses both "may" and "shall", the normal inference is that each is used in its usual sense – the one being permissive, the other mandatory). The board conclude that by systematically employing "may" and "shall" in the language of each subparagraph of section 208(c), Congress manifested its understanding of the difference between the two verbs and communicated its intention that they be interpreted in accordance with their ordinary meaning.

Thus, the use of verb "may" in section 208(c)(2) and 8 C.F.R. §1208.24 – providing that the Attorney General a grant of asyleem status may be terminated if the Attorney General finds that an asylee meets any of the conditions set forth in section 208(c)(2)(A) – (E) – denotes a conferral of discretionary authority, not a mandate. See also Nuru v. Gonzales, 404 F.3d 1207, 1229 (9th cir. 2005) (Noting the discretionary nature of the Attorney General under section 208(c)(2)).

Absent any mandatory bar to eligibility for relief under section 209 of INA, the Attorney General may in the exercise of her discretion grant an alien otherwise inadmissible a waiver to permit adjustment of status from refugee/asylum status to Lawful Permanent Resident, even when the alien has committed violent or dangerous crimes — in order to preserve public interest considerations, or cases where an alien clearly demonstrates the denial of status adjustment would result in exceptional and extremely unusual hardship. See Matter of Jean, 23 I. & N. Dec. 373, 383 (Attorney General, May 2, 2002). See also Matter of K-A-, 23 I. & N. Dec. 661 (BIA 2004) (granting section 209 relief to an asylee convicted of an aggravated felony).

By confering discretional authority, not a mandate, and allowing an otherwise inadmissible alien to reapply for adjustment of status, there is no doubt congress understands the important substantive interest the termination of refugee/asylee status deprives that individual, especially when the alien is subsequently removed from the United States to a country where he had been harmed in the past and is still likely to be harmed in the future.

Viewed in light of the above precedural protections that the statute and its implementing regulations afford to an alien whose asylee status may be subject to termination, we believe that petitioner's arrest and detention by ICE, and subsequent termination of his asylum status at the completion of removal proceedings were arbitrary, capricious and at odds with ICE's own regulations.

Petitioner has been denied an evidenciary hearing before an asylum Officer for a determination that he is no longer eligible for asylum status. He was not given an opportunity to seek a discretionary relief under INA § 209. Pursuant to 8 C.F.R. § 208.24(c), CIS issued and served petitioner a notice of intent to terminate asylum, and elected to vest the Immigration court with jurisdiction over termination proceeding. Without termination hearing being scheduled pursuant to 8 C.F.R. § 208.24(f) and his asylum status having been revoked, ICE placed petitioner in mandatory detention and charged him with removability in removal proceedings. The Immigration Judge denied having jurisdiction to review petitioner's custody determination decision. She deferred judgment on asylum termination question but failed to inform petitioner of his apparent eligibility to apply for discretionary relief under INA § 209 and to afford petitioner an opportunity to make application during the hearing. After about seven months and half, she concluded proceedings, ordered petitioner to be removed and his asylum status terminated.

To support our belief that CIS/ICE and the IJ did not comply with the panoply of procedural protections that the statute and the regulations require when CIS/ICE seeks to terminate asylum status and remove alien from the United States, we safely looked to precedent decisions in case law. Of particular relevance is the BIA's opinion in matters involving aliens admitted as refugee under INA § 207 and those granted asylum pursuant to INA § 208.

In Matter of Garcia-Alzugaray, 19 I.&N. Dec. 407 (BIA 1986), the Board's opinion suggested that a refugee who has not had his refugee status terminated and who has not been determined to be inadmissible in the course of applying for LPR pursuant to 8 C.F.R. § 209.1, may not be placed in removal proceedings even if he has engaged in conduct that would subject a non-refugee to removal. The Board concluded that determination of alien's inadmissibility is required prior to placing an alien in proceedings, and remanded the case for initial determination (i.e., in the first instance).

In the Matter of Jean, 23 I.&N. Dec. 373, 381 (A.G. 2002), the Attorney General's explanation of the refugee adjustment process suggests that if the refugee is found not to merit LPR status, if for example, he or she is subject to one of 8 U.S.C. § 1182(a)'s bar to admission and the Attorney General does not waive that bar, - he will be placed into detention for removal proceedings. see 8 C.F.R. § 209.1 (e).

In Smeriko v. Ashcroft, 387 F.3d 399 (3d Cir. 2004)-which involved an alien admitted as refugee under INA § 207 and who had adjusted her status to that of LPR- the circuit remanded the case back to the BIA for its opinion on whether refugee status is terminated once the alien voluntarily adjust her status to that of LPR. In Matter of Sejid Smriko, 23 I.&N. Dec. 836 (BIA), the Board - which had previously affirmed the IJ's argument that "when an alien voluntarily chooses to adjust his status from that of refugee to LPR, the alien looses refugee status and its accompanying statutory protections - "removal proceedings may be commenced against an alien who was admitted to the United as a refugee

under INA § 207 without prior termination of the alien's refugee status." (distinguishing its previous decision in Garcia-Alzugaray).

Finally, in Matter of K-A-, 23 I. & N. Dec. 661 (BIA 2004), the government appealed the IJ's decision granting an asylee whose status was subject to termination based upon her admitted conviction for aggravated felony – section 209 of the INA as relief from termination. The Board held that "termination of a grant of asylum pursuant to section 208(c)(2) of the Act, 8 U.S.C. § 1158(c)(2) (2000), is not mandatory with respect to an asylee who qualifies and merits adjustment of status and a waiver of inadmissibility under sections 209 (b) and (c) of the Act."

In light of the above precedent decisions-which shed more light on the Congress'expressed intent to require termination of asylum status before initiating any decision or taking action to remove the asylee from the United States, we strongly believe that ICE acted prematurely without respect to due process requirements encompassed in its own regulations.

## ARGUMENT III.

Section 236(c) of the INA, 8 U.S.C. § 1226(c), authorizes the Attorney General to take into custody, and detain without bail, any alien who is "removable" from the United States because he has been convicted of one of a specific set of crimes. However, an alien who is found to maintain his asylum status is not subject to any grounds of inadmissibility or removability.

## A.

Unless asylum status is lawfully terminated and a waiver of inadmissibility denied, an alien asylee—who is found to have been convicted of a criminal offense— is not subject to any grounds of inadmissibility or deportability under 8 U.S.C. §§ 1182(a) and 1227(a) and, as such, is not liable to being taken into custody for purpose of conducting removal proceedings.

The first step in analyzing mandatory detention case is to determine whether INA § 236(c) even applies to the person. Section 236(c) lists broad categories of noncitizens who are subject to mandatory detention based on their removability under specific criminal and security related provisions, including, among others, INA § 212(a) and INA § 237(a)(2)(A)(ii), (A)(iii), and (B), (C), and (D). An alien found to maintain asylee status is non-removable under the terms of the statute. INA § 208(c)(1) provides that "in general, the Attorney General shall not remove or return an alien granted asylum to the alien's country of nationality...." Section 208(c)(2) which authorizes the Attorney General to terminate asylum status, states that an alien whose asylum status is revoked pursuant to paragraph(2) of that subsection is the one subject to deportation on numerous grounds and permits the Attorney General to initiate removal proceedings against that individual. INA § 208(c)(3). The statute does not authorize mandatory detention for reasons other than conducting removal proceedings of aliens subject to applicable grounds of admissibility or removability.

The Supreme Court's decision in Demore V. Kim, 538 U.S. 510, 123 S.Ct. 1708 (2003) - which upheld that detention under INA § 236(C) does not violate due process rights - was premissed on a finding of removability. The court found that Kim was not disputing the INS' conclusion that he is deportable and therefore subject to mandatory detention under § 236(c). Thus asylum status nullifies any finding of removability for section 236(c) purpose.

Moreover, individuals who are applying for forms of relief that would nullify a finding of inadmissibility or removability are beyond the scope of section 236(c) of the Act. The Supreme Court recogonized this important fact when it notes that Kim ultimately may not be deported because he is applying for relief from removal; 123 S.ct. at 1717 n.6. However, the court also said that Kim was applying only for withholding of removal. Withholding, unlike other forms of removal, such as cancellation of removal, asylum status, adjustment of status and waiver of inadmissibility, does not render a person non-removable.

Petitioner in the instant case was taken into ICE custody after he was issued and served a notice of intent to terminate asylum status, and without having been issued a warrant for arrest or a notice to appear (NTA). A notice of intent does not charge the person with a basis for mandatory detention. In an upublished case, the BIA held that the NTA must charge a person with a basis for mandatory removability based on one of the mandatory detention grounds before the person may be

detained pursuant to INA § 236(c). Matter of Leybinsky, A 73 569 408 (BIA Mar. 2, 2000).

## B.

Mandatory detention-beyond a reasonably limited period necessary to complete removable proceedings- violates due process under the Fifth Amendment of the United States Constitution.

The majority decision in Kim V. Demore relies, in part on the fact that "not only does detention have a definite termination point, in the majority of cases it lasts for less than 90 days." Kim, 123 S. Ct. at 1720. In this respect, the court distinguished its holding in Zadvydas V. Davis, 533 U.S. 678 (2001), which addressed indefinite detention under INA § 241 (post order detention). Citing statistics calculated by EOIR, the court concluded that in the "vast majority" of mandatory detention cases, detention lasts about a month and a half, and in the minority of cases – where the person appeals to the BIA- detention lasts about five months. The court left open the possibility that where detention lasts longer that the "vast majority" of cases described above, detention without an individualized bond hearing may no longer be justified. However, the court did not specifically hold that any particular length of time in a specific case would be unreasonable or unconstitutional.

In Ly V. Hansen, 351 F. 3d 263, 270 (6th cir. 2003), the sixth circuit concluded that the proper interpretation of Demore V. Kim was to construe the pre-removal detention statute to include an implicit requirement that removal proceedings be

be conducted within a reasonable time, thereby avoiding the need to mandate the procedural protections that would be required to detain deportable aliens indefinitely." The Sixth Circuit rejected a bright-line approach based on the length of pre-removal detention and adopted a reasonableness approach under which government must demonstrate a strong justification for prolonged detention, constitutional more than a threat to the community, that overbalances the alien's liberty interest. Although it lacks a bright line, this Court has found this approach admistrable and used hearing habeas petition arising from mandatory detention under INA § 236. See Diomande V. Wrona, 2005 U.S. Dist. Lexis 33795 (E.D. Mich.); Parlak V. Baker, 374 F.Supp 2d 551; 2005 U.S. Dist. Lexis 9646 (E.D. Mich.); Uritsky V. Ridge, 2003 U.S. Dist. Lexis 17698 (E.D. Mich.).

Petitioner in the instant case has continously remained in ICE detention since April 15, 2006 though he was not prima facie removable alien, as allowed by the Sixth Circuit in addressing the propriety of indefinite pre-removal detention of aliens. Given the legal intricacies surrounding petitioner's removal status, it will very likely take several more months, if not years, for a final determination of petitioner's status. In determing whether petitioner's detention is unreasonable, this Court cannot ignore the likely future course of this case which shows a real certainty that petitioner is facing a significant period of detention for an indeterminate period of time. This amounts to a further violation of due process under the circumstances.

# CONCLUSION

Based on the forgoing reasons, and most specifically the special nature and protection given to habeas corpus remedies, we urge this court – in its evaluation of petitioner's claims of due process violation – to weigh the nature of the substantive private interest affected by the government action and the risk that the procedures used by the government may erroneously deprive petitioner of that interest.

We pray this court to determine that the REAL ID Act transfer provisions do not apply to petitioner's case, and to permit his habeas claim to be considered on the merits pursuant to the Ly and Singh precedents.

Respectfully submitted this 19th day of February, 2007 by:

LUABEYA F. KAPIAMBA
A- 95 872 234
CALHOUN COUNTY JAIL
185 MICHIGAN AVENUE
BATTLE CREEK, MI 49014

# CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on February 19, 2007, I mail the original and one complete copy of petitioner Kapiamba, Luabeya's brief to the Clerk of the U.S. District Court for the Eastern District of Michigan, Southern Division.

I further certify that I mail on February 19, 2007 by U.S. mail a true and complete copy of petitioner's brief to: STEVEN R. CROLEY, Assistant U.S. Attorney appearing on behalf of Alberto Gonzales, et al.

Signed and certified to this 19th day of February, 2007 by:

LUABEYA F. KAPIAMBA
A- 95 872 234
CALHOUN COUNTY JAIL
185 E. MICHIGAN AVE.
BATTLE CREEK, MI 49014